UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**UNITED STATES OF AMERICA**,                     Case No. 3:10-cr-00142-KI

                   Plaintiff,                     OPINION AND ORDER

    v.

**LUIS PULIDO-AGUILAR**,

                Defendant.


      Billy J. Williams
      Acting United States Attorney
      District of Oregon
      Leah Bolstad
      Assistant United States Attorney
      1000 SW Third Ave., Suite 600
      Portland, OR 97204-2902

             Attorneys for Plaintiff

      Stephen R. Sady
      Chief Deputy Federal Defender

Page 1 - OPINION AND ORDER

Elizabeth G. Daily
Research & Writing Attorney
101 SW Main Street, Suite 1700
Portland, OR 97204

        Attorneys for Defendant


KING, Judge:

Defendant Luis Pulido-Aguilar seeks a reduction of his 151-month sentence of

imprisonment.  Pending before me is Pulido-Aguilar's Motion to Reduce Sentence [84].  For the

reasons set forth below, I deny the motion.

## BACKGROUND

Pulido-Aguilar entered a guilty plea to one count of possessing with the intent to

distribute methamphetamine, in an amount exceeding 50 grams of actual methamphetamine.

At the sentencing hearing on August 20, 2012, I found the total offense level was 35,[1]

with a criminal history category of IV[2], rendering a guideline range of 235 to 293 months.  The

government recommended a sentence of 188 months.  I granted Pulido-Aguilar's request for a

sentence below the advisory guideline range and imposed a prison sentence of 151 months.

On August 10, 2015, Pulido-Aguilar filed a Motion to Reduce Sentence.

## LEGAL STANDARDS

When a guideline range has subsequently been lowered by the Sentencing Commission,

the court "may reduce a term of imprisonment, . . . if such a reduction is consistent with

---

[1]Pulido-Aguilar's base offense level was 38.  With a 3-level adjustment for acceptance of
responsibility, his total offense level was 35.

[2]The parties are correct that the Court made a scrivener's error when it recorded Pulido-
Aguilar's criminal history as a category III in the Statement of Reasons.

Page 2 - OPINION AND ORDER

applicable policy statements issued by the Sentencing Commission."  18 U.S.C. § 3582(c)(2).  In

United States Sentencing Guideline ("U.S.S.G.") § 1B1.10, the Sentencing Commission set out

its policy for addressing an amended guideline range, reiterating that the Court "may reduce the

defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)," but that "any such

reduction in the defendant's term of imprisonment shall be consistent with this policy statement."

U.S.S.G. § 1B1.10(a)(1).  In determining whether a reduction is available, the court must

"determine the amended guideline range that would have been applicable to the defendant if the

amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced."

U.S.S.G. § 1B1.10(b)(1).  Unless the defendant received a reduction for substantial assistance at

his sentencing, "the court shall not reduce the defendant's term of imprisonment . . . to a term

that is less than the minimum of the amended guideline range determined under subdivision (1)

of this subsection."  U.S.S.G. § 1B1.10(b)(2)(A).

    If the offender is eligible for a sentence modification, the Court considers whether

application of the factors in 18 U.S.C. § 3553(a) warrants reduction of the sentence.  *Dillon v.*

*United States*, 560 U.S. 817, 827 (2010).

## DISCUSSION

    Pulido-Aguilar relies on the Sentencing Commission's guideline amendment, made

retroactive to previously sentenced inmates, which changed the offense levels in U.S.S.G.

§ 2D1.1 for some drug offenses.  U.S.S.G., App. C, Amend. 782 and 788.  He argues he is

entitled to a sentence of 121 months, which would be at the low end of the guideline range after

crediting him with the previously granted § 3553(a) downward variance.

Pulido-Aguilar is not eligible for a sentence reduction.  Application of the guideline amendment would render a total offense level of 33.[3]  With a criminal history category IV, Pulido-Aguilar would fall in the sentencing range of 188-235 months--a range higher than the 151-month sentence I imposed.  "[T]he court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range[,]" except in the case of a substantial assistance departure.  U.S.S.G. § 1B1.10(b)(2)(A).  The "amended guideline range" must be calculated without consideration of any departure or variance previously provided, other than for substantial assistance under § 5K1.1.  See U.S.S.G. § 1B1.10, Appl. Notes 1(A) (new guideline range to be determined "before consideration of any departure provision in the Guidelines Manual or any variance"); Appl. Note 3 (reduction not authorized if court's original sentence fell below guideline range other than for substantial assistance).  As a result, Pulido-Aguilar is ineligible for a sentence reduction. *See United States v. Hogan*, 722 F.3d 55, 62 (1st Cir. 2013) ("Every circuit to have addressed the issue agrees that § 1B1.10(b)(2)(B) bars a district court from lowering a defendant's below-guideline sentence unless the departure at his original sentencing was based on his substantial assistance to the government," citing Third, Seventh, Eighth, Ninth, and Eleventh Circuit decisions).

Pulido-Aguilar argues ignoring previously awarded variances conflicts with statutory directives to avoid unwarranted sentencing disparities and to issue individualized sentences.  He also contends applying the guidelines to deny offenders previously earned variances is a violation

---

[3]With the guideline amendment, Pulido-Aguilar would land at base offense level 36. The acceptance of responsibility adjustment puts him at a total offense level of 33.

of the Equal Protection Clause because it means offenders who are more deserving of a reduction do not benefit from the change. He urges me to employ the doctrine of constitutional avoidance and construe the guideline limitation to incorporate previously awarded variances and departures when sentencing him under the amended guideline range.

I.    Whether § 1B1.10 Conflicts with Statutory Requirements

Pulido-Aguilar points out that the statutory purposes of the Sentencing Guidelines are to "assure the meeting of the purposes of sentencing as set forth in § 3553(a)(2)," "avoid[] unwarranted sentencing disparities" among similarly-situated defendants, and "maintain[] sufficient flexibility to permit individualized sentencing decisions[.]" 28 U.S.C. § 991(b). He contends the limitation in § 1B1.10(b)(2),which prohibits the court from reducing a defendant's term below the amended guideline range, conflicts with these statutory purposes by undermining the court's authority to impose a sentence reflective of the defendant's individual circumstances and conduct. He suggests the effect of the current scheme is to eliminate the carefully conceived differences between defendants' sentences. *See* Def.'s Mem. 10-11 (e.g., Defendant A who received no departures/variances initially will end up with the same sentence as Defendant B who received a two-level variance for diminished capacity).[4] In short, according to Pulido-Aguilar, the limitation is inconsistent with the originating statute.

---

[4] "[T]he previous version of § 1B1.10(b) permitted defendants who received a below-guidelines departure or variance during an original sentencing proceeding to receive a comparable reduction below the new guidelines range in a § 3582(c)(2) sentence reduction proceeding." *United States v. Davis*, 739 F.3d 1222, 1224 (9th Cir. 2014) (quoting U.S.S.G. § 1B1.10(b)(2) (2010)). In fact, as Pulido-Aguilar reports, "throughout its history, § 1B1.10 encouraged courts to adhere to prior sentencing decisions." Def.'s Mem. 6. The new limitation prohibiting reductions below "the minimum of the amended guideline range" did not emerge until 2011.

The government relies on *United States v. Forde*, No. 04 Cr. 0048-10 (JSR), 2012 WL 2045851, at *2 (S.D.N.Y. June 5, 2012), to suggest 28 U.S.C. § 991(b) has no place in § 3582(c) sentence reduction proceedings. I do not address this argument because the Ninth Circuit has already recognized the Commission as the authority tasked with promulgating policy statements that, "in the view of the Commission," further the purposes of sentencing. *United States v. Davis*, 739 F.3d 1222, 1225 (9th Cir. 2014). The Commission adopted the limitation at issue here only after considering factors such as the complexity of employing a change, the prospect of litigation, uniformity in sentencing, and avoiding windfalls to defendants who had previously received a departure or variance due to high base offense levels for drug trafficking offenses. *See id.* (describing reasons for policy adoption). As the Ninth Circuit concluded, "In the Commission's view, prohibiting reductions below the amended guidelines range except in the case of substantial assistance to the government struck the appropriate balance. The Commission did not exceed its discretionary authority in making this policy judgment." *Id.*

Further, as the Eleventh Circuit recognized:

> In the words of the Supreme Court, in enacting § 3582(c)(2) "Congress intended to authorize only a limited adjustment to an otherwise final sentence," to be done within the "narrow bounds established by the Commission." *Dillon*, 560 U.S. at 826, 831. And in the words of the Third Circuit speaking about § 1B1.10(b), "Nowhere did Congress require that the Commission permit judges to fashion a reduction with exactly the same tools–departures and variances–they originally used to set an appropriate sentence." [*United States v.*] *Berberena*, [694 F.3d 514, 521 (3rd Cir. 2012)]. Instead of overriding the effect of the sentencing court's original departures and variances, "the Commission has merely limited the extent to which new ones can be awarded in § 3582(c)(2) proceedings." *Id.* The § 1B1.10(b) policy statement neither required nor permitted the district court in this case to undo any departure or variance decision it had made when it originally sentenced [the defendant].

*United States v. Colon*, 707 F.3d 1255, 1260 (11ᵗʰ Cir. 2013).  In sum, Pulido-Aguilar is not

eligible for a sentence reduction because he already received a below-guidelines sentence, and

that limitation is not at odds with the statutory scheme.

II.    Whether § 1B1.10(b) Violates the Equal Protection Clause

        "The liberty protected by the Fifth Amendment's Due Process Clause contains within it

the prohibition against denying to any person the equal protection of the laws." *United States v.*

*Windsor*, 133 S. Ct. 2675, 2695 (2013); *United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9ᵗʰ

Cir. 2015) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)) (technically

Fourteenth Amendment does not apply to the federal government, but the "approach to Fifth

Amendment equal protection claims has always been precisely the same as to equal protection

claims under the Fourteenth Amendment").

        Since no suspect class or deprivation of a fundamental right is at issue, the Commission's

reason for eliminating from eligibility the class of offenders who received a sentence below the

amended guideline range must be "rationally related to a legitimate government interest."

*Navarro*, 800 F.3d at 1113.  It is Pulido-Aguilar's burden to "disprove the rationality of the

relationship between the classification and the purpose." *Id.*  In fact, Pulido-Aguilar has the

difficult burden of rebutting every conceivable ground for the limitation.  *United States v.*

*Salerno*, 481 U.S. 739, 745 (1987) (to succeed on a facial challenge under the Equal Protection

Clause, the plaintiffs must show "that no set of circumstances exists under which the [a]ct would

be valid.").

        "A statutory classification fails rational-basis review only when it rests on grounds wholly

irrelevant to the achievement of the State's objective." *Heller v. Doe*, 509 U.S. 312, 324 (1993)

(citations and internal quotation marks omitted).  I agree with the government that the

Commission's treatment of offenders is rationally related to its legitimate interests.  The

Commission reported that the previous rule had generated litigation and been difficult to apply.

Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. 41,332

(July 13, 2011).  It decided to enact a limitation prohibiting reductions below the amended

guideline range to "promote[] conformity with the amended guideline range and avoid[] undue

complexity and litigation."  *Id.* at 41,334; *see also* U.S.S.G., App. C, Amend. 759 (2011).  In

addition, "[t]he Commission was also concerned that retroactively amending the guidelines could

result in a windfall for defendants who had already received a departure or variance, especially

one that took into account the disparity in treatment between powder and crack cocaine that the

[Fair Sentencing Act] sought to correct."  *Davis*, 739 F.3d at 1225.[5]

Pulido-Aguilar argues the limitation is irrational because it means that the class of

defendants who received non-cooperation departures or variances are denied the benefit of the

guideline amendment, even though they are the least dangerous and most deserving, while a

second class of defendants–who are more dangerous and less deserving–get the benefit of the

guideline amendment.  I disagree.  There is simply no evidence to support the notion that an

offender who received a guideline sentence is more dangerous than an offender who did not.  *See*

*United States v. Garcia-Uribe*, No. 1:08-cr-30039-PA-1, at 7 (D. Or. Oct. 6, 2015) ("But

Defendant has not shown that prisoners who did not receive downward departures or variances

are necessarily less deserving or more dangerous than those prisoners who did receive them.").

---

[5] For the reasons outlined in Pulido-Aguilar's reply, I am not persuaded by the other
rationale offered by the government of the need to avoid geographic disparities.  Gov't Mem. 11
(ECF No. 87); Def.'s Reply 7-9 (ECF No. 88).

There are any number of reasons a judge may choose to impose a guidelines sentence having nothing to do with the offender's danger to the public. *See, e.g., Rita v. United States*, 551 U.S. 338, 349 (2007) (the guidelines "reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment"). Further, as the government notes, if the district court finds a defendant dangerous, it has discretion to deny the reduction; indeed, the application notes instruct courts to "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction[.]" U.S.S.G. § 1B1.10, Appl. Note 1(B)(ii).

Contrary to his position, Pulido-Aguilar's case illustrates the Commission's concerns regarding litigation and the need to avoid windfalls. If I granted Pulido-Aguilar the sentence reduction he requests based on the amended guideline, and incorporated the previous variance I gave him, he could be described as receiving undue consideration. Pulido-Aguilar's original total offense level was 35, rendering a guideline range of 235-293. The government recommended a two-level variance–down to the guideline range he would be at today were he sentenced under the amended guidelines regime–in "recognition that the sentencing guidelines for drug cases are rather high" among other reasons. Gov't Sent. Mem. 12 (ECF No. 76). Defense counsel asked me to impose the statutory mandatory minimum of 120 months–1 month less than Pulido-Aguilar seeks by this motion–and I declined to do so. Instead, I calculated a sentence I thought was reasonable to address his individual circumstances.

In sum, the Commission has ensured the eligibility for a sentence reduction of those offenders who received a guideline sentence originally, while considering those who already received the benefit of a variance or departure as already adequately treated under the sentencing

regime.  *See Dillon*, 560 U.S. at 828 (Section 3582(c) "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines.").  Under rational basis review, "[a] classification does not fail . . . because it is not made with mathematical nicety or because in practice it results in some inequality."  *Navarro*, 800 F.3d at 1114.

For these reasons, I reject Pulido-Aguilar's equal protection challenge.

III.    <u>Discretionary Authority</u>

I note for the benefit of the parties that I would decline to reduce Pulido-Aguilar's sentence as a discretionary matter.  I imposed a sentence I thought was sufficient, but not greater than necessary, for the offense involved.  Notably, as I indicated above, the government moved for a downward variance to reflect the high guidelines for drug offenses.  I imposed a sentence even lower, although not as low as the 120 months defense counsel sought, based on Pulido-Aguilar's role in the offense, his medical history, and the fact that he would be deported.  Thus, even if I had authority, I would find Pulido-Aguilar is not entitled to any further consideration.

## CONCLUSION

For the reasons set forth above, I deny Pulido-Aguilar's Motion to Reduce Sentence [84].

IT IS SO ORDERED.

DATED this ____5th_____ day of November, 2015.


   _/s/ Garr M. King_____
   Garr M. King
   United States District Judge



Page 10 - OPINION AND ORDER