UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA**, | Case No. 3:10-cr-00142-KI |
| Plaintiff, | OPINION AND ORDER ON RECONSIDERATION |
| v. | |
| **LUIS PULIDO-AGUILAR**, | |
| Defendant. | |

    Billy J. Williams
    Acting United States Attorney
    District of Oregon
    Leah Bolstad
    Assistant United States Attorney
    1000 SW Third Ave., Suite 600
    Portland, OR 97204-2902

        Attorneys for Plaintiff

    Stephen R. Sady
    Chief Deputy Federal Defender
    Elizabeth G. Daily
    Research & Writing Attorney

Page 1 - OPINION AND ORDER ON RECONSIDERATION

      101 SW Main Street, Suite 1700
      Portland, OR 97204

           Attorneys for Defendant

KING, Judge:

        Defendant Luis Pulido-Aguilar seeks reconsideration of the Opinion and Order issued November 5, 2015, asking me to withdraw the third section of the Opinion in which I indicated I would decline to use my discretionary authority to reduce his sentence [97]. I grant his request and reissue the Opinion and Order without section III.

        Pulido-Aguilar seeks a reduction of his 151-month sentence of imprisonment. Pending before me is Pulido-Aguilar's Motion to Reduce Sentence [84]. For the reasons set forth below, I deny the motion.

## BACKGROUND

        Pulido-Aguilar entered a guilty plea to one count of possessing with the intent to distribute methamphetamine, in an amount exceeding 50 grams of actual methamphetamine.

        At the sentencing hearing on August 20, 2012, I found the total offense level was 35,[1] with a criminal history category of IV,[2] rendering a guideline range of 235 to 293 months. The government recommended a sentence of 188 months. I granted Pulido-Aguilar's request for a sentence below the advisory guideline range and imposed a prison sentence of 151 months.

        On August 10, 2015, Pulido-Aguilar filed a Motion to Reduce Sentence.

---

    [1]Pulido-Aguilar's base offense level was 38. With a 3-level adjustment for acceptance of responsibility, his total offense level was 35.

    [2]The parties are correct that the Court made a scrivener's error when it recorded Pulido-Aguilar's criminal history as a category III in the Statement of Reasons.

Page 2 - OPINION AND ORDER ON RECONSIDERATION

## LEGAL STANDARDS

When a guideline range has subsequently been lowered by the Sentencing Commission, the court "may reduce a term of imprisonment, . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). In United States Sentencing Guideline ("U.S.S.G.") § 1B1.10, the Sentencing Commission set out its policy for addressing an amended guideline range, reiterating that the Court "may reduce the defendant's term of imprisonment as provided by 18 U.S.C. § 3582(c)(2)," but that "any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement." U.S.S.G. § 1B1.10(a)(1). In determining whether a reduction is available, the court must "determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines . . . had been in effect at the time the defendant was sentenced." U.S.S.G. § 1B1.10(b)(1). Unless the defendant received a reduction for substantial assistance at his sentencing, "the court shall not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range determined under subdivision (1) of this subsection." U.S.S.G. § 1B1.10(b)(2)(A).

If the offender is eligible for a sentence modification, the Court considers whether application of the factors in 18 U.S.C. § 3553(a) warrants reduction of the sentence. *Dillon v. United States*, 560 U.S. 817, 827 (2010).

## DISCUSSION

Pulido-Aguilar relies on the Sentencing Commission's guideline amendment, made retroactive to previously sentenced inmates, which changed the offense levels in U.S.S.G.

§ 2D1.1 for some drug offenses. U.S.S.G., App. C, Amend. 782 and 788. He argues he is entitled to a sentence of 121 months, which would be at the low end of the guideline range after crediting him with the previously granted § 3553(a) downward variance.

Pulido-Aguilar is not eligible for a sentence reduction. Application of the guideline amendment would render a total offense level of 33.[3] With a criminal history category IV, Pulido-Aguilar would fall in the sentencing range of 188-235 months–a range higher than the 151-month sentence I imposed. "[T]he court shall not reduce the defendant's term of imprisonment under 18 U.S.C. § 3582(c)(2) . . . to a term that is less than the minimum of the amended guideline range[,]" except in the case of a substantial assistance departure. U.S.S.G. § 1B1.10(b)(2)(A). The "amended guideline range" must be calculated without consideration of any departure or variance previously provided, other than for substantial assistance under § 5K1.1. See U.S.S.G. § 1B1.10, Appl. Notes 1(A) (new guideline range to be determined "before consideration of any departure provision in the Guidelines Manual or any variance"); Appl. Note 3 (reduction not authorized if court's original sentence fell below guideline range other than for substantial assistance). As a result, Pulido-Aguilar is ineligible for a sentence reduction. *See United States v. Hogan*, 722 F.3d 55, 62 (1st Cir. 2013) ("Every circuit to have addressed the issue agrees that § 1B1.10(b)(2)(B) bars a district court from lowering a defendant's below-guideline sentence unless the departure at his original sentencing was based on his substantial assistance to the government," citing Third, Seventh, Eighth, Ninth, and Eleventh Circuit decisions).

---

[3] With the guideline amendment, Pulido-Aguilar would land at base offense level 36. The acceptance of responsibility adjustment puts him at a total offense level of 33.

Pulido-Aguilar argues ignoring previously awarded variances conflicts with statutory directives to avoid unwarranted sentencing disparities and to issue individualized sentences. He also contends applying the guidelines to deny offenders previously earned variances is a violation of the Equal Protection Clause because it means offenders who are more deserving of a reduction do not benefit from the change. He urges me to employ the doctrine of constitutional avoidance and construe the guideline limitation to incorporate previously awarded variances and departures when sentencing him under the amended guideline range.

I.  Whether § 1B1.10 Conflicts with Statutory Requirements

Pulido-Aguilar points out that the statutory purposes of the Sentencing Guidelines are to "assure the meeting of the purposes of sentencing as set forth in § 3553(a)(2)," "avoid[] unwarranted sentencing disparities" among similarly-situated defendants, and "maintain[] sufficient flexibility to permit individualized sentencing decisions[.]" 28 U.S.C. § 991(b). He contends the limitation in § 1B1.10(b)(2), which prohibits the court from reducing a defendant's term below the amended guideline range, conflicts with these statutory purposes by undermining the court's authority to impose a sentence reflective of the defendant's individual circumstances and conduct. He suggests the effect of the current scheme is to eliminate the carefully conceived differences between defendants' sentences. *See* Def.'s Mem. 10-11 (e.g., Defendant A who initially received no departures/variances will end up with the same sentence as Defendant B who

received a two-level variance for diminished capacity).[4] In short, according to Pulido-Aguilar, the limitation is inconsistent with the originating statute.

The government relies on *United States v. Forde*, No. 04 Cr. 0048-10 (JSR), 2012 WL 2045851, at *2 (S.D.N.Y. June 5, 2012), to suggest 28 U.S.C. § 991(b) has no place in § 3582(c) sentence reduction proceedings. I do not address this argument because the Ninth Circuit has already recognized the Commission as the authority tasked with promulgating policy statements that, "in the view of the Commission," further the purposes of sentencing. *United States v. Davis*, 739 F.3d 1222, 1225 (9th Cir. 2014). The Commission adopted the limitation at issue here only after considering factors such as the complexity of employing a change, the prospect of litigation, uniformity in sentencing, and avoiding windfalls to defendants who had previously received a departure or variance due to high base offense levels for drug trafficking offenses. *See id.* (describing reasons for policy adoption). As the Ninth Circuit concluded, "In the Commission's view, prohibiting reductions below the amended guidelines range except in the case of substantial assistance to the government struck the appropriate balance. The Commission did not exceed its discretionary authority in making this policy judgment." *Id.*

Further, as the Eleventh Circuit recognized:

> In the words of the Supreme Court, in enacting § 3582(c)(2) "Congress intended to authorize only a limited adjustment to an otherwise final sentence," to be done

---

[4] "[T]he previous version of § 1B1.10(b) permitted defendants who received a below-guidelines departure or variance during an original sentencing proceeding to receive a comparable reduction below the new guidelines range in a § 3582(c)(2) sentence reduction proceeding." *United States v. Davis*, 739 F.3d 1222, 1224 (9th Cir. 2014) (quoting U.S.S.G. § 1B1.10(b)(2) (2010)). In fact, as Pulido-Aguilar reports, "throughout its history, § 1B1.10 encouraged courts to adhere to prior sentencing decisions." Def.'s Mem. 6. The new limitation prohibiting reductions below "the minimum of the amended guideline range" did not emerge until 2011.

> within the "narrow bounds established by the Commission." *Dillon*, 560 U.S. at 826, 831. And in the words of the Third Circuit speaking about § 1B1.10(b), "Nowhere did Congress require that the Commission permit judges to fashion a reduction with exactly the same tools–departures and variances–they originally used to set an appropriate sentence." [*United States v.*] *Berberena*, [694 F.3d 514, 521 (3rd Cir. 2012)]. Instead of overriding the effect of the sentencing court's original departures and variances, "the Commission has merely limited the extent to which new ones can be awarded in § 3582(c)(2) proceedings." *Id*. The § 1B1.10(b) policy statement neither required nor permitted the district court in this case to undo any departure or variance decision it had made when it originally sentenced [the defendant].

*United States v. Colon*, 707 F.3d 1255, 1260 (11th Cir. 2013). In sum, Pulido-Aguilar is not eligible for a sentence reduction because he already received a below-guidelines sentence, and that limitation is not at odds with the statutory scheme.

II.     Whether § 1B1.10(b) Violates the Equal Protection Clause

"The liberty protected by the Fifth Amendment's Due Process Clause contains within it the prohibition against denying to any person the equal protection of the laws." *United States v. Windsor*, 133 S. Ct. 2675, 2695 (2013); *United States v. Navarro*, 800 F.3d 1104, 1112 n.6 (9th Cir. 2015) (quoting *Weinberger v. Wiesenfeld*, 420 U.S. 636, 638 n.2 (1975)) (technically Fourteenth Amendment does not apply to the federal government, but the "approach to Fifth Amendment equal protection claims has always been precisely the same as to equal protection claims under the Fourteenth Amendment").

Since no suspect class or deprivation of a fundamental right is at issue, the Commission's reason for eliminating from eligibility the class of offenders who received a sentence below the amended guideline range must be "rationally related to a legitimate government interest." *Navarro*, 800 F.3d at 1113. It is Pulido-Aguilar's burden to "disprove the rationality of the relationship between the classification and the purpose." *Id*. In fact, Pulido-Aguilar has the

Page 7 - OPINION AND ORDER ON RECONSIDERATION

difficult burden of rebutting every conceivable ground for the limitation. *United States v. Salerno*, 481 U.S. 739, 745 (1987) (to succeed on a facial challenge under the Equal Protection Clause, the plaintiffs must show "that no set of circumstances exists under which the [a]ct would be valid.").

"A statutory classification fails rational-basis review only when it rests on grounds wholly irrelevant to the achievement of the State's objective." *Heller v. Doe*, 509 U.S. 312, 324 (1993) (citations and internal quotation marks omitted). I agree with the government that the Commission's treatment of offenders is rationally related to its legitimate interests. The Commission reported that the previous rule had generated litigation and been difficult to apply. Notice of Final Action Regarding Amendment to Policy Statement 1B1.10, 76 Fed. Reg. 41,332 (July 13, 2011). It decided to enact a limitation prohibiting reductions below the amended guideline range to "promote[] conformity with the amended guideline range and avoid[] undue complexity and litigation." *Id.* at 41,334; *see also* U.S.S.G., App. C, Amend. 759 (2011). In addition, "[t]he Commission was also concerned that retroactively amending the guidelines could result in a windfall for defendants who had already received a departure or variance, especially one that took into account the disparity in treatment between powder and crack cocaine that the [Fair Sentencing Act] sought to correct." *Davis*, 739 F.3d at 1225.[5]

Pulido-Aguilar argues the limitation is irrational because it means that the class of defendants who received non-cooperation departures or variances are denied the benefit of the guideline amendment, even though they are the least dangerous and most deserving, while a

---

[5] For the reasons outlined in Pulido-Aguilar's reply, I am not persuaded by the other rationale offered by the government of the need to avoid geographic disparities. Gov't Mem. 11 (ECF No. 87); Def.'s Reply 7-9 (ECF No. 88).

Page 8 - OPINION AND ORDER ON RECONSIDERATION

second class of defendants–who are more dangerous and less deserving–get the benefit of the guideline amendment.  I disagree.  There is simply no evidence to support the notion that an offender who received a guideline sentence is more dangerous than an offender who did not.  *See United States v. Garcia-Uribe*, No. 1:08-cr-30039-PA-1, at 7 (D. Or. Oct. 6, 2015) ("But Defendant has not shown that prisoners who did not receive downward departures or variances are necessarily less deserving or more dangerous than those prisoners who did receive them.").  There are any number of reasons a judge may choose to impose a guidelines sentence having nothing to do with the offender's danger to the public.  *See, e.g., Rita v. United States*, 551 U.S. 338, 349 (2007) (the guidelines "reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment").  Further, as the government notes, if the district court finds a defendant dangerous, it has discretion to deny the reduction; indeed, the application notes instruct courts to "consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction[.]" U.S.S.G. § 1B1.10, Appl. Note 1(B)(ii).

      Contrary to his position, Pulido-Aguilar's case illustrates the Commission's concerns regarding litigation and the need to avoid windfalls.  If I granted Pulido-Aguilar the sentence reduction he requests based on the amended guideline, and incorporated the previous variance I gave him, he could be described as receiving undue consideration.  Pulido-Aguilar's original total offense level was 35, rendering a guideline range of 235-293.  The government recommended a two-level variance–down to the guideline range he would be at today were he sentenced under the amended guidelines regime–in "recognition that the sentencing guidelines for drug cases are rather high" among other reasons.  Gov't Sent. Mem. 12 (ECF No. 76).

Defense counsel asked me to impose the statutory mandatory minimum of 120 months–1 month less than Pulido-Aguilar seeks by this motion–and I declined to do so. Instead, I calculated a sentence I thought was reasonable to address his individual circumstances.

In sum, the Commission has ensured the eligibility for a sentence reduction of those offenders who received a guideline sentence originally, while considering those who already received the benefit of a variance or departure as already adequately treated under the sentencing regime. *See Dillon*, 560 U.S. at 828 (Section 3582(c) "represents a congressional act of lenity intended to give prisoners the benefit of later enacted adjustments to the judgments reflected in the Guidelines."). Under rational basis review, "[a] classification does not fail . . . because it is not made with mathematical nicety or because in practice it results in some inequality." *Navarro*, 800 F.3d at 1114.

For these reasons, I reject Pulido-Aguilar's equal protection challenge.

## CONCLUSION

I grant Pulido-Aguilar's Motion for Reconsideration [97] and reissue the November 5, 2015 Opinion and Order without section III. For the reasons set forth above, I continue to deny Pulido-Aguilar's Motion to Reduce Sentence [84].

IT IS SO ORDERED.

DATED this   19th   day of November, 2015.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge